**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JEREMY DE LOS SANTOS and
JOSHUA DE LOS SANTOS,

      Plaintiffs,

v.                                                                          Civ. No. 12-375 WPL/GBW

CITY OF ROSWELL, JEFFREY PRINCE,
SCOTT OLDANI, LANDON STEPHENSON,
SCOTT STEVENSON, JON GOKEY,
CRUZ ZAVILA, RON SMITH, B. BAILEY,
HELEN CHEROMIAH, KEITH RIGHTSELL,
and BARBARA ANN PATTERSON,

      Defendants.

## <u>ORDER DENYING PLAINTIFFS' MOTION TO COMPEL</u>

This matter is before me on Plaintiffs' First Motion to Compel Defendant Barbara

Ann Patterson to submit amended discovery responses. *Doc. 78*. Plaintiffs request that

the Court compel Defendant Patterson to respond to three interrogatories, which she

originally refused to answer on the basis of attorney-client privilege. *Id*. Having held

two hearings on the motion and reviewed the briefing, I find that although the privilege

has been waived for certain statements contained in a lease and police department

memorandum, that waiver does not extend to related undisclosed materials. Defendant

Patterson originally raised a causation argument in her motion for absolute and

qualified immunity that also potentially implicated attorney-client privileged

1

information.  *See doc. 88* at 17-19.  Because Defendant Patterson has agreed to withdraw that defense, I decline to consider at-issue waiver at this time.[1]

I.    BACKGROUND

Plaintiffs Jeremy and Joshua De Los Santos are brothers and members of the Old Paths Baptist Church in Roswell, New Mexico.  *Doc. 46* ¶ 45.  They "believe that it is their mandatory duty to boldly preach the Gospel in public."  *Id*. ¶ 49.  They were arrested by Roswell police officers on seven different occasions:

1.  On August 16, 2010, Jeremy was arrested while preaching on a sidewalk outside of Billy Ray's Lounge, a nightclub in Roswell, and charged with disorderly conduct.  *Id*. ¶¶ 58-59.

2.  On September 24, 2010, Jeremy was arrested while preaching outside of the Old Paths Baptist Church in Roswell and charged with disorderly conduct.  *Id*. ¶¶ 70-71.

3.  On November 28, 2010, Jeremy was arrested while preaching on a sidewalk outside of Church on the Move in Roswell and charged with party to a crime and disturbing lawful assembly.  *Id*. ¶ 88.

4.  On May 28, 2011, Jeremy was arrested at a public event at the Cielo Grande Park in Roswell and charged with obstructing a police officer.  *Id*. ¶¶ 100-101.

---

[1] Defendant Patterson's withdrawal of this argument is without prejudice as to her ability to raise the argument in future pleadings.

5.  On May 28, 2011, Joshua was arrested while preaching on a sidewalk outside of the Roswell Convention Center and charged with criminal trespass.  *Id*. ¶¶ 111, 114.

6.  On July 1, 2011, Jeremy and Joshua were arrested while at a public event at the UFO Museum in Roswell.  *Id*. ¶ 125.  Both were charged with criminal trespass, obstructing an officer, and wrongful use of public property.  *Id*. ¶¶ 130, 133.

7.  On August 28, 2011, Jeremy was arrested for preaching outside of the Roswell police station two days earlier, on August 26, and charged with disorderly conduct.  *Id*. ¶¶ 150, 162-64.

The charges associated with the first arrest on April 16, 2010, were dismissed by the state court after a trial.  *Id*. ¶ 61.  Those associated with the six other arrests were dismissed by the Roswell City Attorney prior to trial.  *Id*. ¶¶ 73, 90, 104, 116, 132, 135, 166.

Plaintiffs bring eight counts arising out of those seven arrests: (1) false arrest, false imprisonment, illegal detention, and malicious prosecution in violation of the Fourth and Fourteenth Amendments; (2) retaliation against the lawful exercise of the right to free speech in violation of the First Amendment; (3) violation of the First Amendment right to free exercise of religion; (4) violation of the right to free exercise of religion guaranteed by the New Mexico Constitution; (5) excessive force in violation of the Fourth and Eighth Amendments; (6) municipal liability; (7) a variety of tort claims

under the New Mexico Tort Claims Act; and (8) misconduct by the Roswell City

Attorney. *Id*. ¶¶ 171-198.

## II.   THE CURRENT DISCOVERY DISPUTE

The instant motion concerns a discovery dispute between Plaintiffs and

Defendant Barbara Ann Patterson, the City Attorney for the City of Roswell.  Defendant

Patterson asserted attorney-client privilege in response to three of Plaintiffs'

interrogatories.  Those interrogatories sought information related to the legal advice

provided by Defendant Patterson to Roswell Police Officer Eric Brackeen, Roswell

employee Lanie Mitchell, and Roswell Police Sgt. Ron Smith, among others.[2] *Doc. 78* at

24-26.  Plaintiffs argue that the City has waived the attorney-client privilege[3] as to these

three interrogatories by revealing Defendant Patterson's legal advice in the following

three documents:

1. A Roswell Police Department Supplemental Report by Sgt. Ron Smith dated July
   6, 2011 ("police report").  *Doc. 78*, Ex. A.  The relevant statements are:

---

[2] Specifically, Plaintiffs ask for (1) advice given on or about July 1, 2011, to Sgt. Smith or other Roswell
police officers about the arrest of members of the Old Paths Baptist Church; (2) advice given on or about
May 28, 2011, to Lanie Mitchell or other Roswell employees regarding the inclusion of parking lots in the
lease of the Civic Center; and (3) advice given to Officer Brackeen about Defendant Jeremy De Los Santos.
*Doc. 78* at 24-26.
[3] Plaintiffs also argue that Defendant Patterson's statements are not protected by the work product
doctrine.  *Doc. 78* at 5-8.  Defendant Patterson has not asserted the work product doctrine, and, in fact,
denies that the interrogatories seek attorney work product.  *Doc. 80* at 3 n.2.  Therefore, I will not consider
whether the statements fall within the protections of that doctrine.

    a. "I contacted Commander Brown and the City Attorney the City Attorney

       [sic] advised me the permit was valid and the Old Paths Baptist Church

       members could be charged with criminal trespass." *Id*. at 4.

    b. "Commander Brown advised me the City Attorney advised the charges to

       be filed on the three members of the church group arrested during this

       contact should be: (1) Criminal trespass[;] (2) Obstructing, resisting, or

       evading an officer[;] (3) Wrongful use of public property." *Id*. at 6.

2. A handwritten note on a Roswell Convention and Visitors Bureau Lease

   Agreement ("lease"). *Doc. 78*, Ex. B.  The note reads:

    a. "Per Barbara Patterson when leasing the facility parking lots included."

3. A memorandum from Commander Eric Brackeen of the Roswell Police

   Department to all officers ("memorandum"). *Doc. 78*, Ex. C.  The relevant

   portion reads:

    a. "I have spoken with City Attorney Barbara Patterson and she advised that

       if someone, not just Mr. DeLosSantos [sic] and his group, is preaching

       what is a generalization of God[']s beliefs for example 'God hates whores',

       then this is considered freedom of speech.  However, if someone states for

       example 'God hates you whores, or God hates you because you are a

       whore' then this is a specific verbal attack on a person or group and is

NOT a generalization.  If this happens in our presence the person can be arrested for Disorderly Conduct."

Plaintiffs contend that these statements constitute waiver of attorney-client privilege because they were disclosed voluntarily—the police report via a response to a New Mexico Inspection of Public Records Act (IPRA) request and the lease and memorandum during discovery in this case.  They argue that this waiver extends not only to the statements themselves but also to all related, undisclosed materials via subject matter waiver.  *See generally doc. 78*.  Plaintiffs also argue that the attorney-client privilege has been waived for the information sought in their interrogatories because Defendant Patterson put her own legal advice at issue in her Motion for Summary Judgment Based on Absolute Immunity and/or Qualified Immunity.  *See doc. 78* at 17-19.

I held a hearing on Plaintiff's motion on February 5, 2013.  *See doc. 81*.  After the hearing I ordered the parties to provide supplemental briefing on two issues: (1) whether the statements in the police report and the note on the lease constitute confidential legal advice protected by the attorney client privilege, and (2) whether the City's disclosure of the police report and the lease pursuant to an IPRA request constitutes subject matter waiver of the privilege.  *Doc. 82*.

In their supplemental brief, Plaintiffs argue that the statements in the police report and lease do not constitute confidential legal advice and are therefore not

protected by the attorney-client privilege.  *Doc. 105* at 2-5.  They then argue that even if the statements are privileged, the City has waived the privilege as to both the statements themselves and associated subject matter by allowing their release in IPRA responses.  *Id*. at 5-13.  Defendants contend that the statements in the police report and lease are protected by the attorney client privilege.  *Doc. 92* at 4-5; *Doc. 95* at 2-3. Defendant City of Roswell goes on to argue that it has not waived the privilege because the City's public records custodian does not have authority to waive the privilege.  *Doc. 95*  at 4-8.  The City contends that even if the privilege was waived, extending that waiver to related subject matter would be unfair.  *Id*. at 6-8.

III.    <u>ANALYSIS</u>

I find that the statements in all three documents constitute confidential legal advice protected by the attorney-client privilege.  The City has not waived that privilege as to the statements in the police report, but it has waived the privilege as to the statements in the lease and the memorandum.  However, that waiver does not extend to related, undisclosed materials.  Defendant Patterson's withdrawal of her causation argument from her pending motion for summary judgment renders Plaintiffs' at-issue waiver argument moot at this time.

A. <u>**The Court will analyze the issue under the federal law of attorney-client privilege**</u>

When a case involves both federal and pendant state law claims, courts should look to federal law to resolve privilege issues regarding federal claims and state law for

issues involving state claims.  Fed. R. Evid. 501; *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995).  Ordinarily, however, when the asserted privilege relates to evidence that is relevant to both federal and state law claims, federal privilege law applies to all claims.  *Vondrak v. City of Las Cruces*, 760 F. Supp. 2d 1170, 1175 (D.N.M. 2009); *Foley v. N.M. Dep't of Healt*h, No. 07-604, Mem. Op. & Order, at 5 (D.N.M. Aug. 20, 2009) (doc. 306).  Here, the statements at issue relate to the City Attorney's legal advice to city police officers concerning arrest and charging decisions and to city employees regarding the inclusion of city parking lots in a lease to private individuals. They are therefore potentially relevant to both Plaintiffs' federal and state law claims alleging, *inter alia*, malicious prosecution, illegal detention, and violations of their First Amendment and New Mexico constitutional rights to free speech and free exercise of religion.  Consequently, I will analyze the privilege question pursuant to federal law.

The Tenth Circuit's decision in *Sprague v. Thorn Americas, Inc.*, does not alter my approach.  In that case, the court stated that "with both federal claims and pendant state law claims implicated, we should consider both bodies of law under *Motley* and Fed. R. Evid. 501."  129 F.3d 1355, 1369 (10th Cir. 1997).  However, it went on to note that if federal and state law conflict as to whether a piece of evidence is privileged, "then an analytical solution must be worked out to accommodate the conflicting policies embodied in the state and federal privilege law."  *Id*.  Because the court in *Sprague*

found that federal and state law supported the same conclusion as to the issue in that case, it refrained from articulating such a solution.  *Id.*

Plaintiffs argue that the Court should apply federal law.  Defendants, relying on *Sprague*, argue that I must also consider New Mexico law on privilege.  However, as in *Sprague*, I need not delve into that murky well at this time.  With the exception of the "at-issue" waiver argument, which has been mooted by Defendant Patterson's withdrawal of her causation argument, Defendants do not assert that the answer to the current problem would come out differently under state law as opposed to federal law.  *See doc. 80* at 5 n.3; *doc. 92* at 3-4.  I will therefore analyze these privilege issues under federal law.

### B.  The statements in the police report, lease, and memorandum are protected by the attorney-client privilege

Although the parties did not consider whether the statements in the police report and lease constitute confidential legal advice protected by the attorney-client privilege in their original briefs,[4] I asked the parties to address that question in supplemental briefing.  *See doc. 82.*  Plaintiffs argue that the statements are not protected by the attorney-client privilege;[5] Defendants argue they are.  I find that the statements in both the police report and the lease are protected by the attorney-client privilege.  Because

---

[4] Plaintiffs implicitly concede in their original motion that the statements at issue are protected by the attorney-client privilege because they discuss only waiver of the privilege, not its initial application.  *See generally doc. 78; see also doc. 80* at 3.

[5] Plaintiffs make this argument despite the fact that if I were to find that the statements were not privileged, Plaintiffs would not be entitled to the remedy they seek—subject matter waiver.

neither party disputes that the statements in the memorandum are covered by the privilege, I find that those statements are also privileged.

### 1.  Attorney-client privilege

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance."  *Fisher v. United States*, 425 U.S. 391, 403 (1976).  "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  "[A] critical component of the privilege 'is whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may reasonably be assumed that the communication will remain in confidence.'"  *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985)).  "Because confidentiality is key to the privilege, the attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party."  *Id*. at 1185 (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)) (internal quotation marks and brackets omitted).  "[T]he confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  *Id*. (quoting *Ryans*, 903 F.2d at 741 n.13).

A municipality can invoke the attorney-client privilege to protect communications between its representatives and attorneys regarding legal advice sought and received on behalf of the municipality.  *See Hinsdale v. City of Liberal*, 961 F. Supp. 1490, 1494 (D. Kan. 1997) (applying attorney-client privilege to a city); *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (discussing application of attorney-client privilege to government entities and collecting cases).  "The party seeking to assert the attorney-client privilege has the burden of establishing its applicability."  *In re Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998).

### 2.  The police report

Defendants City and Patterson argue that the statements contained in Sgt. Ron Smith's supplemental report are protected by attorney-client privilege because they are (1) confidential (2) communications (3) between the City attorney and a city police officer (4) regarding legal advice—whether and with what the Old Paths Baptist Church members could be charged.  *Doc. 92* at 5; *Doc. 95* at 3.  Plaintiffs concede the final three elements but argue that the statements are not confidential because the police report is a public document.

The first step, and the one at which Plaintiffs apparently err, is identifying the communications at issue.  The relevant communications are the conversations between Sgt. Smith and the City Attorney and between Commander Brown and the City Attorney.  Plaintiffs do not dispute that those original oral communications were

confidential.  Given that the Plaintiffs also do not dispute the remaining elements of

privilege, the Court concludes that they fall within attorney-client privilege.  Recording

those privileged communications in a police report and then disclosing the report are

both relevant to waiver which will be discussed *infra*.

### 3.  The lease

The lease is more problematic because the statement at issue is an anonymous

handwritten note.  *Doc. 78*, Ex. B.  Defendants argue that it can be inferred from context

that the author of the note was a city employee and that the note therefore reflects an

oral conversation between the City Attorney and a city employee.  *Doc. 92* at 4-5; *Doc. 95*

at 3.  Plaintiff argues that, because Defendants have failed to identify the author of the

note, they have not met their burden of proving all elements of the privilege.  *Doc. 105*

at 5.  I agree with Defendants.  The lease is a standard form contract prepared by the

City for the rental of the Roswell Convention and Visitors Bureau.  The content and

location of the note is sufficient to demonstrate that it was written by a city employee

and reflects a discussion between that employee and the City Attorney after the

employee sought clarification about a term of the contract.  The text of the note—"per

Barbara Patterson when leasing the facility parking lots included"—indicates that the

author asked the City Attorney whether parking lots were included in the lease and

received an answer in the affirmative.  *Cf. Post v. Killington*, Ltd., 262 F.R.D. 393, 399-400

(D. Vt. 2009) (finding emails privileged despite recipient being listed as "unknown"

because the substance of the communication indicates it was sent to a client); *Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, (D. Kan. 2007) (finding defendant failed to meet burden for establishing attorney client privilege when it failed to identify both the author and the recipient on its privilege log).

Plaintiffs also argue that note should not be privileged because it was not confidential.  Like the police report, the note records a confidential conversation between the City Attorney and a city employee.  Whether the writing of the note on a lease and its subsequent disclosure waives the attorney-client privilege is a separate inquiry and will be discussed *infra*.

### C. <u>The attorney-client privilege has been waived as to the statements in the lease and memorandum, but not the police report</u>

Having determined that the statements in all three documents are protected by attorney-client privilege, I must now consider whether the City has waived that privilege.  Federal Rule of Evidence 502 governs waiver of the attorney-client privilege for disclosures made in a state or federal proceeding.  Fed. R. Evid. 502 .  Disclosures not covered by Rule 502 are covered by federal common law.  Fed. R. Evid. 501.  Because the police report was disclosed via a response to an IPRA request, its waiver is governed by common law.  However, because the lease and memorandum were both disclosed during discovery in this case, their waiver is covered by Rule 502.  *See* Wright & Miller, *Federal Practice & Procedure Evidence* § 5443.  I find that the attorney client

privilege has not been waived for the statements in the police report but has been

waived as to those in the lease and memorandum.

### 1. The police report

Because the police report was not disclosed in a federal proceeding or to a federal

office or agency, Rule 502 does not apply to it.  Instead, the common law governs.[6]  *See*

Fed. R. Evid. advisory committee's note ("[W]hile establishing some exceptions to

waiver, [Rule 502] does not purport to supplant applicable waiver doctrine generally.").

Under the common law, "[t]he attorney-client privilege is lost if the client discloses the

substance of an otherwise privileged communication to a third party."  *In re Qwest*

*Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quoting *United States v. Ryans*,

903 F.2d 731, 741 n.13 (10th Cir. 1990)).  "[T]he confidentiality of communications

covered by the privilege must be jealously guarded by the holder of the privilege lest it

be waived. The courts will grant no greater protection to those who assert the privilege

than their own precautions warrant."  *Id*. (quoting *Ryans*, 903 F.2d at 741 n.13).  "Any

voluntary disclosure by the client is inconsistent with the attorney-client relationship

---

[6] In a case involving the release of privileged information in a response to a FOIA request prior to the commencement of litigation, the Court of Federal Claims, concerned about whether a disclosure prior to suit can provide the basis for waiver in that same suit,  decided to treat the documents as though they were disclosed during the litigation.  *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 500-01 (Fed. Cl. 2009).  The court then went on to apply Rule 502 to the FOIA documents.  Because Rule 502 was not intended to replace the common law of waiver, I see no reason to treat the documents here as disclosed during the litigation.  Under the common law, the disclosure of documents both before and during litigation can operate as waiver.  *See Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1368-69 (Fed. Cir. 2012) (finding prelitigation disclosure waived attorney-client privilege and questioning whether Rule 502(a)'s fairness concerns should be extended to prelitigation waiver); *Oasis Int'l Waters, Inc. v. United States*, slip op., 2013 WL 1680460, at *15 (Fed. Cl. Apr. 18, 2013) ("[I]t appears that subject matter waiver may continue to apply to inadvertent disclosures that occur prior to litigation.").

and waives the privilege." *Id.* (quoting *United States v. Bernard*, 877 F.2d 1463 (10th Cir. 1989)). Plaintiffs argue that the City waived the privilege over the statements when (1) Sgt. Smith included those statements in his report and (2) the City released the report in its response to Plaintiffs' IPRA request. *Doc. 78* at 11; *Doc. 105* at 6-8. Defendants argue that neither Sgt. Smith nor the city employee responsible for responding to IPRA requests has authority to waive the City's privilege. *Doc. 80* at 3-4; *Doc. 95* at 4-5.

### a. Sgt. Smith did not waive the privilege by including the City Attorney's statements in the police report

As to the first contention—that Sgt. Smith waived the privilege when he put the statements in a public report—there is no evidence that the police report would have inevitably become a public document. Plaintiff argues that the police report is a public document because it would have to be disclosed pursuant to New Mexico Rule of Procedure for the Municipal Courts 8-504, which governs disclosure prior to criminal prosecutions. *Doc. 105* at 3-4. Rule 8-504 requires that the prosecution disclose ten days before trial "any records, papers, documents or recorded statements made by witnesses or other tangible evidence in its possession, custody and control which are material to the preparation of the defense or are intended for use by the prosecution at the trial or were obtained from or belong to the defendant." N.M. R. Proc. Mun. Ct. 8-504(A).

Plaintiffs' argument fails for two reasons. First, Rule 8-504 only comes into play if an individual is prosecuted. A police report regarding an arrestee who is never prosecuted will not have to be produced pursuant to the rule. The report at issue

15

concerns the July 1, 2011, arrest of Plaintiffs.  *Doc. 78*, Ex. A.  Those charges were

dismissed by the City Attorney prior to trial; there is no evidence that the report was

ever produced pursuant to Rule 8-504.  *See doc. 46* ¶¶ 73, 90, 104, 116, 132, 135, 166.

Second, the rule must be read in light of New Mexico Rule of Evidence 11-503

which provides for attorney-client privilege in state court.  *See* N.M. R. Evid. 11-1101(C)

("The rules of privilege apply to all stages of a case or proceeding.").  Thus, even if the

report was required to be produced prior to Plaintiffs' trials, the City could still assert

the attorney-client privilege over the statements at issue and redact those portions of the

report.

### b.  The City Clerk does not have authority to waive the privilege

In response to Plaintiff's second contention—that the City waived the privilege

by disclosing the report in an IPRA response—Defendants argue that the City's public

records custodian did not have authority to waive its privilege.  Few cases have

considered who has the authority to waive a municipality's attorney-client privilege.  In

the context of corporations, the Supreme Court has held that "the power to waive the

corporate attorney-client privilege rests with the corporation's management and is

normally exercised by its officers and directors."  *Commidity Futures Trading Comm'n v.*

*Weintraub*, 471 U.S. 343, 348-49.  Courts have extended the same logic to governments.

*See Interfaith Housing Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1399-1400 (D.

Del. 1994) (finding member of town council did not have authority to waive the town's

privilege because, unlike a mayor or CEO, he did not have a "clear leadership position" which gave him authority to bind the town); *Oasis Int'l Waters, Inc. v. United States*, slip op., 2013 WL 1680460, at *12-*13, *16-*17 (Fed. Cl. Apr. 18, 2013) (finding Lieutenant Colonel in the U.S. Army had authority to waive United States' privilege but Army contractor did not); *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) (indicating position of Chicago Transit Authority employee is relevant to whether he or she has authority to waive CTA's privilege).

Here, the report was released to Plaintiffs via a response to their request under IPRA, N.M. Stat. §§ 14-2-1 – 14-2-12.  IPRA requires that "[e]ach public body [] designate at least one custodian of public records." *Id*. § 14-2-7.  The statute gives that custodian five specific duties: (1) to receive requests for records; (2) respond to requests; (3) provide opportunities to inspect public records; (4) provide facilities to make copies of public records; and (5) post public notices concerning IPRA.  *Id*.  Notably, the statute does not give the custodian discretion regarding what documents he or she may produce.  Instead, documents are presumed producible unless they fall within one of the exemptions listed in § 14-2-1.  One of those exemptions is "attorney-client privileged information."  *Id*. § 14-2-1(6).  The custodian must remove exempt information from documents prior to releasing them, for example, by redaction.  *Id*. § 14-2-9.

Nothing in the statute indicates that the public records custodian—here, the City Clerk[7]—determines whether information is privileged.  More likely, the City Clerk confers with and relies upon the City Attorney in making that determination, just as he would rely on law enforcement personnel to identify information falling within the exemption for "tactical response plans or procedures . . . which could reveal specific vulnerabilities, risk assessments or tactical emergency security procedures that could be used to facilitate the planning or execution of a terrorist attack."[8]  *See id*. § 14-2-1(7).

The City Clerk has not been delegated sufficient authority to waive the City's privilege.  His role under IPRA is administrative—he receives requests, collects responsive documents from the appropriate parties, and releases those documents.  Although he has a duty to refrain from disclosing exempt documents, he is not the person who determines whether particular documents are exempt; he relies on others with more specialized expertise to make those determinations.  His mistaken release of a privileged document is not a voluntary waiver of the City's privilege.  *Cf. Bd. of Supervisors of Milford Twp. v. McGogney*, 13 A.3d 569, 574 (Pa. Commw. Ct. 2011), *appeal denied*, 611 Pa. 644 (July 8, 2011) (finding open records officer for Township did not have authority to waive the Township's privilege).

---

[7] Although neither party identifies the City's public records custodian, we can infer that it is the City Clerk since the City Clerk engaged in correspondence with Plaintiffs regarding their IPRA request.  *See doc. 78*, Ex. A.  Moreover, according to the City of Roswell's website, "[t]he City Clerk is considered the Primary Records Custodian for the City of Roswell.  All Public Information Requests should originate with the City Clerk."  *See* http://www.roswell-nm.gov/staticpages/index.php/city_clerk_office.

[8] There is no evidence before the Court that the City Clerk is or must be an attorney or have any sort of legal training.

###### c.   The inadvertent disclosure of the report via an IPRA request did not waive the privilege

Plaintiffs contend that regardless of whether the City Clerk had authority to waive the privilege, the public release of the police report pursuant to IPRA operates as a waiver.  Inadvertent disclosure of a privileged document can waive the attorney client privilege in certain circumstances, regardless of whether the person who released the document had the authority to release it.[9]  *MSP Real Estate, Inc. v. City of New Berlin*, 2011 WL 3047687, at *4 (E.D. Wis. July 22, 2011) (noting that inadvertent disclosure "by its nature suggests that in most instances the waiver would not be expressly authorized by any municipal corporate officers or director"); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 106 (S.D.N.Y. 1985) (finding court need not determine whether individual had authority to waive privilege when disclosure was inadvertent); *Oasis Int'l Waters, Inc. v. United States*, slip op., 2013 WL 1680460, at *13 (Fed. Cl. Apr. 18, 2013) (distinguishing between waivers caused by intentional disclosure by a person with authority to waive privilege and those caused by inadvertent disclosure).

Neither the Tenth Circuit nor any judge in the District of New Mexico has addressed when inadvertent disclosure constitutes waiver under federal common law.[10]

---

[9] Thus, the inadvertent analysis would also apply if the mistaken decision to release the report was made further up the City's chain of command.  For example, if the City Clerk requested all documents responsive to Plaintiffs' request from the police department with any exempt information removed or redacted, and someone with sufficient authority to waive the City's privilege accidentally sent him an unredacted document, that mistake would constitute inadvertent disclosure, not voluntary waiver.

[10] Although the Tenth Circuit in a footnote suggested briefly that inadvertent disclosure may be a basis for waiver, *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990), it did not decide the issue.  *See*

19

Courts have taken three different approaches to the issue. Some—most notably the

D.C. Circuit—have held that any disclosure of privileged information, regardless of

whether it was inadvertent, waives the privilege. *See, e.g., In re Sealed Case*, 877 F.2d 976,

980 (D.C. Cir. 1989). Others have held that inadvertent disclosures never waive

privilege. *See, e.g., Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 954-55 (N.D. Ill.

1982). The majority of courts, however, have applied a fact-specific balancing approach.

*See, e.g., Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993); *Telephonics Corp.*

*v. United States*, 32 Fed. Cl. 360, 362 (Fed. Cl. 1994); *Lois Sportswear*, 104 F.R.D. at 105;

*Wallace v. Beech Aircraft Corp.*, 179 F.R.D. 313, 314 (D. Kan. 1998); *FDIC v. Marine Midland*

*Realty Credit Corp.*, 138 F.R.D. 479, 482 (E.D. Va. 1991). I find that this third approach

best serves the purposes of the attorney-client privilege by allowing for "the protection

of communications which the client fully intended would remain confidential, yet at the

same time [] not reliev[ing] those claiming the privilege of the consequences of their

carelessness if the circumstances surrounding the disclosure do not clearly demonstrate

that continued protection is warranted." *Alldread*, 988 F.2d at 1434.

      The factors considered in determining whether an inadvertent disclosure waives

privilege include: (1) the reasonableness of the precautions taken to prevent disclosure;

(2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the

---

*Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 303 n.4 (D. Utah 2002) ("The *Ryans* footnote is too slim
a statement on which to find an absolute waiver from inadvertent disclosure.").

extent of the disclosure; and (5) fairness.  *Id*.; *Wallace*, 179 F.R.D. at 1998.  Here, the City

took reasonable precautions to prevent disclosure when, pursuant to IPRA, it

authorized the City Clerk to release only non-exempt documents and instructed

employees to identify and withhold exempt information.  It is not clear what additional

precautions the City could have taken to prevent this sort of mistake except to

implement additional layers of review prior to the release of documents under IPRA.

While that might be ideal, a single layer of review is not unreasonable for a small city.

Moreover, the City asserted attorney-client privilege as soon as it was made aware of

the police report by Plaintiffs' interrogatory.[11]  *See doc. 78* at 24.  The disclosure was

small and could understandably be the result of inadvertence rather than carelessness:

it consisted of two sentences in a police report that was part of a 450-page disclosure.

*See id*., ex. A.  Finally, the fairness prong is particularly important in this case because

the disclosure was made pursuant to an open records law.  The intent of IPRA is

transparency and disclosure: the act aims to give the public access "to the greatest

possible information regarding the affairs of government and the official acts of public

officers and employees."  N.M. Stat. § 14-2-5.  Finding a waiver of attorney-client

privilege in situations such as this, where the disclosure is inadvertent and relatively

---

[11] Plaintiffs' IPRA request is dated March 14, 2012, and the City's response letter is dated is March 22, 2012.  *Doc. 78*, Ex. A.  This case was not filed until April 12, 2012, so the City was not on notice of the potential use of these documents in litigation when it responded to the IPRA request.  *See doc. 1.*

minor, would encourage the City to err on the side of designating more information as

exempt, undermining the fundamental purpose of IPRA.

Applying the balancing approach, I find that the City has not waived the

attorney client privilege as to the police report.[12]

### 2. The lease and memorandum

#### a. *The attorney client privilege is waived as to the statements in the lease and the memorandum*

Because the lease and memorandum were both released during and as part of

this litigation, they are governed by Federal Rule of Evidence 502.[13]  Rule 502(b)

provides that disclosures made in a federal proceeding do not operate as a waiver if "(1)

the disclosure is inadvertent; (2) the holder of the privilege or protection took

reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable

steps to rectify the error, including (if applicable) following Federal Rule of Civil

Procedure 26(b)(5)(B)."  Fed. R. Evid. 502(b).  The Rule does not define "inadvertent"

and the Tenth Circuit has not addressed the issue.  Of the courts that have considered it,

---

[12] Nonetheless, because Defendants disclaimed any intention to "claw-back" the police report, this finding does not require the return of the report by Plaintiffs.  *See docs. 81,111.*  For the same reason, it does not foreclose Plaintiffs' use of the document nor limited discovery as discussed at the hearing.  *See doc. 111.*

[13] Although the parties treat the lease, like the police report, as a disclosure under IPRA governed by common law, it is properly treated as a disclosure in a federal proceeding governed by Rule 502.  The lease was requested by Plaintiffs under IPRA in a March 23, 2012, letter.  *Doc. 78*, Ex. B.  The response, however, was sent not by the City but by Ms. Barbara Smith-Duer, Defendants' counsel of record in this action.  *Id*.  The letter accompanying the responsive documents is dated May 31, 2012, over a month after Plaintiffs had filed this suit, and the subject line reads "De Los Santos v. City of Roswell, et al., U.S. District Court Cause No. CIV-12-00375 WPL/GBW."  *Id*.  Perhaps most tellingly, in her letter Ms. Smith-Duer asks Mr. Macy, Plaintiff's attorney, to "[p]lease consider these [documents] to be part of our Initial Disclosures."  *Id*.  The parties do not dispute that the memorandum was disclosed during this litigation: it is Bates-stamped, indicating that it was produced by Defendants during discovery.  *Doc. 78*, Ex. C.

some have continued to use the common law balancing test described above to

determine if a disclosure is inadvertent.  *See Silverstein v. Fed. Bureau of Prisons*, 2009 WL

4949959, at *11 (D. Colo. Dec. 14, 2009); *Rhoades v. Young Women's Christian Ass'n of

Greater Pittsburgh*, 2009 WL 3319820, at *2 (W.D. Pa. Oct. 14, 2009).  Others have

conflated inadvertency with the second and third requirements of the rule—the duty to

take reasonable steps to prevent and rectify the disclosure.  *See Williams v. Dist. of

Columbia*, 806 F. Supp. 2d 44, 48-53 (D.D.C. 2011).  Still others have given inadvertent its

dictionary definition of unintentional or mistaken.  *See Coburn Group, LLC v. Whitecap

Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009); *Amobi v. Dist. of Columbia Dep't

of Corr.*, 262 F.R.D. 45, 53 (D.D.C. 2009).  In this case, the precise definition of

inadvertent does not matter because Defendants have failed to show that they meet the

second and third requirements of Rule 502(b).  *See Silverstein*, 2009 WL 4949959, at *11

("The burden of showing that the privilege has not been waived remains with the party

claiming the privilege.").

　　　　First, there is no evidence that Defendants took steps to prevent disclosure of

these two documents.  While the police report was produced pursuant to IPRA—a

statute that explicitly prohibits the disclosure of privileged information—the lease and

the memorandum were produced during discovery.  The onus was therefore on

Defendants' attorneys to take precautions to identify and prevent the disclosure of

privileged information.  They have not provided any evidence whatsoever regarding

23

precautions taken to protect privilege. *See Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 510 (Fed. Cl. 2009) (finding disclosure not inadvertent under Rule 502(b) when "defendant failed to provide sufficient information concerning its . . . procedures to demonstrate their adequacy"). In fact, the documents before the Court indicate a lack of precaution—Defendants' attorneys took responsibility for responding to Plaintiff's IPRA request for the lease presumably in order to exercise more control over the documents released in light of this litigation and yet nevertheless produced the handwritten note.[14]

Second, there is no evidence that Defendants made any efforts to rectify their errors pursuant to Rule 26(b)(5)(B). Under that rule, "[i]f information produced in discovery is subject to a claim of privilege . . . , the party making the claim may notify any party that received the information of the claim and the basis for it." Fed. R. Civ. P. 26(b)(5)(B). Even if Defendants did not become aware of the disclosure of the lease and memorandum until they received Plaintiffs' interrogatories, they did not seek the return of those documents pursuant to Rule 26(b)(5)(B) or file a motion for a protective order. In fact, the City itself—the holder of the privilege—did nothing to reclaim the documents or assert the privilege. Only Defendant Patterson claimed the privilege in

---

[14] It is not clear from the documents before the Court whether the version of the lease signed by and provided to the private contracting parties included the handwritten note or whether the note was written only on the City's copy of the lease. If the public copy of the lease included the note as an attempt to clarify a term of the contract, the City waived the attorney-client privilege when it disclosed the lease to the private contracting parties. *See In re Qwest Commc'ns Int'l Inc.*, 450 F.3d at 1185 (noting that attorney-client privilege is lost when the client voluntarily discloses the privileged information to a third party).

response to Defendants' interrogatories.  *Cf. Eden Isle Marina*, 89 Fed. Cl. at 511 (finding

disclosure not inadvertent under Rule 502(b) when defendant did not object to the use

of privileged documents at a deposition, seek return of documents under Rule

26(b)(5)(B), place the documents on its privilege log, or file a motion for a protective

order).

### b.  *The waiver does not extend to related, undisclosed materials under Rule 502(a)*

Having found that attorney-client privilege has been waived for the lease and the

memorandum, I now turn to whether that waiver extends to related undisclosed

information—that is, whether it operates as subject matter waiver.  Rule 502(a) governs

subject matter waiver for disclosures made in a federal proceeding.  The rule states that

"the waiver extends to an undisclosed communication or information in a federal or

state proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed

communications or information concern the same subject matter; and (3) they ought in

fairness to be considered together."  Fed. R. Evid. 502(a).  The Advisory Committee note

explains that "a subject matter waiver . . . is reserved for those unusual situations in

which fairness requires a further disclosure of related, protected information, in order

to prevent a selective and misleading presentation of evidence to the disadvantage of

the adversary."  *Id*. advisory committee note.  "Thus, subject matter waiver is limited to

situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."[15]  *Id*.

There is no evidence that Defendants disclosed the lease and memorandum while withholding other information in order to gain a strategic advantage in litigation. Neither of these documents is misleading without contextualization.  The note on the lease is a straightforward clarification of a term of the lease and the memorandum sets forth the police department's policy for arresting and charging people preaching in public.  *Cf. Silverstein*, 2009 WL 4949959, at *13 (finding subject matter waiver when disclosed document gave false impression and defendants unnecessarily delayed in determining provenance of document).  Defendants gain no advantage by disclosing this information.  *See Oasis Int'l Waters*, 2013 WL 1680460, at *22 (refusing to find subject matter waiver when partial disclosure "did not appear to give defendant a tactical advantage over plaintiff").  "Rather than constituting some sort of scheme to bolster its defense, defendant[s'] production of protected documents was merely . . .  careless and reckless."  *Eden Isle Marina*, 89 Fed. Cl. at 521.

Moreover, Plaintiffs request an extremely broad subject matter waiver: they argue that the subject matter waiver for the lease should extend to "all other communications concerning advice provided by Defendant Patterson to City of Roswell

---

[15] Some courts have read "intentional" broadly, ignoring the Advisory Committee's "additional requirement" that the disclosure be "selective, misleading and unfair" since it is not part of the rule itself. *See Bear Republic Brewing Co. v. Central City Brewing Co.*, 275 F.R.D. 43, 48 (D. Mass. 2011).  I find that the Advisory Committee note, while not dispositive, helps clarify both the intentionality and fairness prongs of the Rule and will consider it.

employees, including RPD officers, regarding the event at the Civic Center on May 28, 2011." *Doc. 105* at 14.  Likewise, they argue the waiver for the memorandum should include "all other communications concerning advice provided by Defendant Patterson to City of Roswell employees, including RPD officers, regarding 'what or how' to charge Plaintiffs." *Doc. 78* at 22.  These requests go far beyond information needed to clarify and contextualize the lease and memorandum.  Fairness does not require further disclosures of attorney-client privileged information in this case and, consequently, I find no subject-matter waiver under Rule 502.

### D. <u>Defendant Patterson's withdrawal of her causation defense renders Plaintiffs' at-issue waiver argument moot at this time</u>

Plaintiffs also contend that Defendant Patterson has waived attorney-client privilege by putting her legal advice at issue in her motion for summary judgment on the basis of absolute and/or qualified immunity.  *See doc. 78* at 17-19; *doc. 111*.  At-issue waiver, also known as implied waiver, occurs when the party claiming the privilege places the privileged information at issue, regardless of whether the party has disclosed any of that information.  *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 256 F.R.D. 661, 669 (D.N.M. 2009); *see also Frontier Refining Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699-700 (10th Cir. 1998) (describing three approaches to at issue waiver).  Defendant Patterson's motion asserts one defense that potentially puts her legal advice at issue—namely, that she is entitled to qualified immunity because Plaintiffs cannot demonstrate that she caused Plaintiffs' constitutional rights to be violated.  *See doc. 88* at 16-19.  In

particular, she claims that "plaintiff has no evidence of a causal connection between a note indicating that a parking lot is included in a lease, and any deprivation of a constitutional right by Ms. Patterson" and "[t]here is no evidence that [Defendant Patterson] authorized any arrest." *Id*. at 17-18.

I held a hearing on this issue on May 16, 2013. *See doc. 111*.  At the hearing, Defendant Patterson agreed to withdraw, without prejudice to her ability to raise it in the future, this "lack of causation" argument. *Id*. (agreeing to withdraw argument in *doc. 88* at 17-19 under heading "Plaintiffs have failed to establish a violation of their Constitutional rights by Ms. Patterson").  Should the Court grant her motion based on her other arguments—namely, absolute immunity and/or qualified immunity due to the lack of clearly established law—her causation argument will be moot.  If, however, the Court denies her motion, Defendant Patterson will be permitted to file a second motion for summary judgment raising the withdrawn argument.  At that time, I will rule on the applicability of at-issue waiver.

## IV.   CONCLUSION

In sum, I find that the attorney-client privilege has not been waived as to the police report.  Although it has been waived as to the lease and memorandum, that waiver does not constitute subject matter waiver and therefore does not extend to related undisclosed materials.  Because Defendant Patterson has withdrawn without

prejudice from her summary judgment motion the defense that could potentially put her legal advice at issue, I decline to consider at-issue waiver at this time.

Plaintiffs' Motion to Compel is DENIED.  Pursuant to the Stipulated Order Extending Time to File Response (*doc. 106*), no Amended Response to Defendant Patterson's Motion for Summary Judgment shall be permitted.  Defendant Patterson's Reply to that Motion shall be filed within 18 days of the date of this Order.

**IT IS SO ORDERED.**


_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE